* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties. *Page 2 
2. The parties dispute whether an employment relationship existed between plaintiff, Rolando Zamora, Jr., and defendant-employer, Charlotte Drywall, Inc.
3. Royal Sun Alliance was the insurer for Charlotte Drywall, Inc. at the time of the injuries on June 18, 2003, relevant to this claim.
4. Plaintiff's Average Weekly Wage has not been stipulated to and is an issue in this matter.
5. Plaintiff claims injury to his left shoulder, left arm, let wrist and left hand. The date of the injury is June 18, 2003. The date his disability began was June 18, 2003. Plaintiff contends that he was completely unable to earn wages in employment from June 18, 2003 until February 16, 2004.
6. The following documents were stipulated into evidence as follows:
 a. Stipulated Exhibit #1-Plaintiff's Medical Records;
 b. Stipulated Exhibit #2-Industrial Commission Forms, Orders, and Plaintiff's Answers to Discovery;
 c. Stipulated Exhibit #3 — Plaintiff's applications for insurance, certificates of insurance and policy information.
7. Additional documents admitted into evidence include Plaintiff's Exhibit #1 — Doctor's Note for out of work time from June 27, 2003 through July 27, 2003 through Greensboro Orthopedics; out of work note from August 6, 2003 through the first post-visit for surgery for pin replacement; out of work note for surgery for pin removal.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was injured in an automobile accident on June 18, 2003. He alleges his injuries occurred during the course of his employment with defendant-employer. Defendant-carrier timely denied plaintiff's claim on grounds that plaintiff was not an employee of defendant-employer.
2. Plaintiff was born September 9, 1980 and had reached age 25 at the time of the evidentiary hearing in this matter. He currently lives in Winston-Salem. Plaintiff completed the eighth grade while residing in Durham.
3. Plaintiff began work hanging sheetrock with his father at some point after completing the eighth grade. He worked for his father for approximately six years before seeking his own work in the Greensboro area. Plaintiff eventually began retaining his own employees to assist with sheetrock hanging projects he contracted to perform. He would seek out the work, obtain a job in his name and bring on additional employees needed to complete the job. He then paid these employees out of earnings he received for each project. Plaintiff did not deduct taxes on these earnings.
4. Plaintiff made contact with one of defendant's supervisors in the summer of 2002. He requested an opportunity to perform sheetrock/drywall work for defendant. Plaintiff was given the chance to perform such work, and his subcontract opportunities with defendant increased steadily over the next several months. Defendant was known as "Therrell Custom Design" at the time plaintiff began this subcontract work. There came a time subsequent to plaintiff's accident that Therrell changed its name to "Charlotte Drywall, Inc." Therrell Custom Design and Charlotte Drywall, Inc. are one and the same corporation, the only difference being a corporate name change. *Page 4 
5. Plaintiff and defendant had an agreement whereby defendant would pay plaintiff $4.75 per board of sheetrock that was hung. Defendant periodically withheld ten percent (10%) of plaintiff's earnings as workers' compensation premiums for plaintiff's employees during times when plaintiff was without insurance covering them.
6. Plaintiff contends he was an employee of defendant and that his employees, or "sheetrock hangers" as he referred to them in his testimony, were also employees of defendant. Defendant contends in defense of this claim that plaintiff was a sole proprietor and independent contractor and that plaintiff's sheetrock hangers were employees of plaintiff, and not employees of defendant.
7. Plaintiff and his sheetrock hangers were paid weekly by defendant at the rate of $4.75 per board of sheetrock that was hung or installed. Plaintiff had at least four sheetrock hangers working for him at all times and sometimes more. He had as many as six or seven sheetrock hangers working for him on some occasions. Plaintiff would cash checks issued to him by defendant and pay each of his sheetrock hangers $150.00 per day out of the total earnings. Plaintiff retained as profit whatever was left after paying the sheetrock hangers $150.00 per day.
8. Plaintiff purchased his own workers' compensation insurance policy in September 2002. He thought he could save the ten percent (10%) that was being deducted from payment checks issued to him by defendant. Plaintiff intended to form a partnership with a certain Angel Chappa Flores around this time. The partnership never began doing business and by October 22, 2002, plaintiff cancelled the workers' compensation insurance policy that he had purchased.
9. Plaintiff's application for this workers' compensation insurance policy and the subsequent policy were received into evidence as Stipulated Exhibit Number 3. When plaintiff *Page 5 
obtained this insurance, he provided a Certificate of Insurance to defendant, and defendant stopped withholding the ten percent (10%) workers' compensation premium from plaintiff's weekly checks. When plaintiff purchased his workers' compensation insurance coverage through Guilford Insurance Brokers, Inc., plaintiff was issued a workers' compensation insurance policy by Companion Property Casualty Insurance Company. Plaintiff made an election at the time that he purchased this insurance that he was not to be covered under the policy himself as the sole proprietor. Rather, the policy was for the benefit of his employees only.
10. After plaintiff cancelled the workers' compensation policy with Companion Property Casualty Insurance Company, he notified defendants to resume withholding ten percent (10%) from his checks for workers' compensation insurance. He requested insurance for his employees. Plaintiff testified that he told a supervisor of the defendant-employer that he wanted coverage for himself. However, plaintiff did not have any communications or conversations with Scott Therrell, the sole owner of Therrell Custom Design, about his workers' compensation insurance. He did not make any election to be covered as a sole proprietor and did not give any notice of such an election to Scott Therrell, nor to Royal Sun Alliance Insurance Company, the carrier with whom Therrell Custom Design was insured. The Royal Sun Alliance workers' compensation insurance policy was administered by St. Paul Travelers Insurance. Plaintiff did not contact St. Paul Travelers, nor did he provide St. Paul Travelers with any notice of an election to be covered as a sole proprietor.
11. Plaintiff and his sheetrock hangers were working at a jobsite in Kernersville on June 18, 2003. On this day, plaintiff and five sheetrock hangers rode from Winston-Salem where they resided, to Greensboro before proceeded to the jobsite in Kernersville. The purpose of this *Page 6 
trip was to pick up two more sheetrock hangers. Plaintiff and his seven workers were returning to the jobsite in Kernersville when they were involved in an automobile accident. Plaintiff sustained injuries to his left hand and arm as a result of this accident. Plaintiff was out of work from June 18, 2003 until February 16, 2004 as a result of these injuries. Nonetheless, he continued to receive income from his drywall business during the period of time that he was recuperating from his arm injury, as plaintiff's sheetrock hangers continued to perform work.
12. Defendant did not provide plaintiff transportation to and from the jobsite at the time of his injury on June 18, 2003. Plaintiff was not paid travel expenses by defendant at any time. Plaintiff was never on the payroll of defendant for the purpose of withholding payroll taxes and Social Security. Moreover, none of the hangers employed by plaintiff were ever put on defendant's payroll for tax withholding or Social Security purposes. Plaintiff did not return to work until February, 2004; however, his drywall hangers continued to work for Therrell Custom Design. Therrell Custom Design continued to make payments to plaintiff, and plaintiff would pay his wall hangers $150.00 per day, retaining whatever balance there was out of said payment for his own income.
13. Plaintiff purchased another workers' compensation policy on October 3, 2003, through the same insurance agent he used to purchase his initial policy in September of 2002. Plaintiff was prompted to purchase his second workers' compensation policy because he had begun to do work for Foust Drywall, even though plaintiff contends that he was disabled from work and written out of work by his doctors. Plaintiff's employees performed this contract work for Foust Drywall. Foust Drywall made payment to plaintiff just as Therrell Custom Design had done. From time to time there were other homes in which plaintiff's employees hung drywall and the payment was made to plaintiff. When plaintiff purchased this second workers' *Page 7 
compensation policy from Liberty Mutual Insurance Company on October 3, 2003, he was again excluded from coverage under this policy as a sole proprietor. Plaintiff acknowledged in testimony on cross-examination that he was aware that a partner or sole proprietor could elect whether to be covered by workers' compensation insurance. In light of this testimony and evidence of plaintiff's election not to be covered prior to the period when defendant began deducting for coverage and later when he again purchased his own worker's compensation policy through Liberty Mutual, the undersigned give less weight to plaintiff's contention that he intended to elect coverage for himself after cancelling his own workers' compensation insurance policy and believed he was covered by defendant's policy.
14. Plaintiff's relationship with regard to defendant-employer was that of an independent contractor. Plaintiff was engaged in the independent business of hanging sheetrock and functionally operated as a sole proprietorship, even though he actually operated under his own name as an individual.
15. Plaintiff exercised independent skill based on his several years of experience in the business of hanging sheetrock. Defendant did not direct his work. Rather, he was hired to perform a job within a specified time frame. There is no evidence of record indicating plaintiff was otherwise restricted in the performance of his contract with defendant. Plaintiff had some contact with one of defendant's supervisors; however, there is no indication the supervisor directed plaintiff or his employees in the details of the work.
16. Plaintiff was paid by defendant on a fixed price, quantitative basis. His agreement with defendant provided that plaintiff would hang drywall at a rate of $4.75 per board of sheetrock that was hung. Check stubs issued to plaintiff by defendant and stipulated into *Page 8 
evidence by the parties indicate that varying amounts were paid for plaintiff's work. He earned no salary or regular hourly wage for a fixed number of hours per day.
17. Defendant deducted a percentage of income from plaintiff's contract earnings to provide workers' compensation insurance when plaintiff had no coverage for his employees. North Carolina law does not allow employers to deduct workers' compensation premiums from the wages of an employee, pursuant to N.C. Gen. Stat. § 97-21. The fact defendant made such deductions is additional evidence plaintiff was an independent contractor and not an employee.
18. Plaintiff produced no evidence he was subject to discharge for adopting one method of hanging sheetrock rather than another. Plaintiff's continued relationship with the defendant was based upon defendant's individual requests for plaintiff to provide sheetrock hanging services. Additionally, plaintiff performed a number of projects for defendant on a regular basis, but was not in defendant's "regular employ" as that term is commonly used. Plaintiff was not on defendant's payroll as an employee of the company. Similarly, plaintiff performed drywall hanging work for other parties besides defendant. He did not exclusively contract with defendant to earn his living.
19. Plaintiff also engaged assistants to work with him. He paid them at a rate of $150.00 per day. Defendant had no input into the amount plaintiff paid his sheetrock hangers, nor is there any evidence that defendant ever paid these individuals directly or participated in any decision making regarding the hiring and firing of those individuals.
20. Finally, plaintiff has offered no evidence that defendant exercised control over how plaintiff selected his time. There is no evidence that defendant directed plaintiff and his crew on when to arrive in the morning or when to leave at the end of each day-only that *Page 9 
manpower was needed to perform sheetrock hanging duties on certain construction sites, for which plaintiff would be paid.
21. Plaintiff is now doing business under the company name of "Superior Drywall," rather than his individual name, and plaintiff now employs both drywall hangers and finishers. Plaintiff indicated that he maintained the Liberty Mutual workers' compensation policy from 2003 until 2005. There is no evidence that plaintiff currently has workers' compensation coverage. Plaintiff indicates that he did not pay federal income tax for the year 2003 and he did not offer any evidence tending to establish his total compensation for 2002 and/or 2003.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving the existence of an employer-employee relationship in this matter. Hughart v. DascoTransport, Inc., 167 N.C. App. 685, 606 S.E. 2d 379 (2005). Plaintiff has failed to establish by the greater weight of evidence that such a relationship existed between himself and defendant-employer at the time of his accident on June 18, 2003. Plaintiff meets all the statutory and common law definitions of an independent contractor. N.C. Gen. Stat. §97-2; McCown v. Hines, 353 N.C. 683, 549 S.E. 2d 175
(2001); Youngblood v. North State Ford Truck Sales, 321 N.C. 380,364 S.E. 2d 433 (1988); Hayes v. Board of Trustees of Elon College,224 N.C. 11, 29 S.E. 2d 137 (1944).
2. Plaintiff periodically carried workers' compensation insurance for his own employees. Defendant obtained a Certificate of Insurance from plaintiff as required by N.C. Gen. Stat. § 97-19 for these periods. During periods when plaintiff did not carry his own *Page 10 
insurance, defendant deducted a percentage of plaintiff's earnings to provide such coverage. Nonetheless, competent evidence establishes that plaintiff was also the sole proprietor of his own drywall hanging business. N.C. Gen. Stat. § 97-2(2) indicates that sole proprietors can elect workers' compensation coverage by notifying the insurer of this intention. Plaintiff has failed to produce competent evidence supporting his allegation that he notified defendant of his election to be covered under defendant's policy.
3. As there was no employment relationship between plaintiff and defendant in this matter, plaintiff's claim for workers' compensation benefits must be denied.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and the same is hereby, DENIED.
2. Each side shall pay its own costs.
3. Each side shall pay one-half of the costs due the Industrial Commission.
This the 6th day of May, 2008.
S/_____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________________ BUCK LATTIMORE COMMISSIONER
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER