***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. Builders Mutual Insurance Company is the carrier liable on the risk.
3. Plaintiff's average weekly wage will be determined from a Form 22 to be provided by Defendants with supporting wage documentation. *Page 2 
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 45 years old. He resides in Hubert, North Carolina.
2. Plaintiff and his friend Mike Delabruere worked together in May and June of 2008 building a deck at a private residence. They had previously worked together on several construction jobs. Plaintiff had carpentry experience and had built fences before.
3. In early July 2008, Plaintiff looked in the Jacksonville Daily News and saw a want ad seeking fence installers. He called the number listed and made an appointment to meet with the owner of Defendant-Employer, Andy Treece. Plaintiff also called Mr. Delabruere and asked him whether he was interested in working for Defendant-Employer.
4. On Friday, July 11, 2008, Plaintiff and Mr. Delabruere went to Defendant-Employer's office in Snead's Ferry, North Carolina, and spoke with Mr. Treece. Plaintiff did not have a driver's license, so Mr. Delabruere drove them.
5. While at Defendant-Employer's office on July 11, 2008, Mr. Delabruere filled out an employment application. Plaintiff testified that he filled one out also, but Mr. Treece testified that Plaintiff did not do so and that Defendant-Employer has no record that Plaintiff ever applied for a job. Mr. Treece testified that he asked Plaintiff several times if he wanted to apply for a job and that Plaintiff responded that he did not because he already had a job and that he was just there accompanying his friend. Mr. Treece testified that he noticed on July 11 that Plaintiff and Mr. Delabruere were wearing long-sleeved coats, which was odd at that time of year, but he assumed they were covering up tattoos. *Page 3 
6. Plaintiff testified that Mr. Treece told him and Mr. Delabruere that the pay for fence installers was $1.10 per foot of fencing installed, with a reduction for workers' compensation premiums.
7. Mr. Delabruere confirmed that he filled out an application for himself, but he was not sure whether Plaintiff filled one out. Mr. Delabruere recalled that he was the one who filled out an application because he was the one who had the driver's license. Between the two of them, Mr. Delabruere and Plaintiff figured they could earn about $1,100.00 per week working as fence installers with Defendant-Employer.
8. Mr. Treece hired Mr. Delabruere on a probationary basis to work with Defendant-Employer. He was one of four applicants hired, out of 12 people who responded to the want ad. He was to start on Monday, July 14, 2008.
9. Plaintiff testified that he and Mr. Delabruere were at Defendant-Employer's office at 7 a.m. on Monday morning, July 14, ready to go. He further testified that they waited around for about an hour because the company work truck would not start, and that Mr. Treece's son (and not Mr. Treece himself) was at the office that morning and assigned the various crews their jobs for the day. Plaintiff further testified that, after a mechanic came and got the work truck started, he left in the work truck with Mr. Delabruere and their supervisor, Ian McAvoy.
10. Mr. Treece testified that it was he, not his son, who was present and assigned the jobs on July 14 and that Mr. Delabruere, but not Plaintiff, was there. Mr. Treece testified that he assigned Mr. Delabruere to work with Mr. McAvoy and that the two of them left together in the work truck. Mr. Treece testified that he did not see Plaintiff on Monday morning and that, had Plaintiff been there, Mr. Treece would have made him leave because he was not an employee. *Page 4 
11. Plaintiff testified that he, Mr. Delabruere, and Mr. McAvoy went together in the work truck to the first job on July 14, 2008, and finished up in about two hours. Then, he testified, they went to a Home Depot to pick up materials for the next job and, after stopping for lunch and fueling the work truck, went to the next job, which was at a house in Catherine Lake, North Carolina.
12. Plaintiff testified that they arrived at the Catherine Lake job at around 1 p.m. They unloaded the tools and materials and started installing 2x4s and slats. The posts had already been set.
13. All of the tools used on the job belonged to Defendant-Employer.
14. While they were installing fence slats together at the Catherine Lake house, Mr. Delabruere allegedly shot an eight-penny nail into the back of Plaintiff's left upper arm with a nail gun when Plaintiff accidentally brushed up against the gun and it discharged.
15. The accident happened at around 3 p.m. Plaintiff testified that, after it happened, Mr. McAvoy drove him and Mr. Delabruere back to Defendant-Employer's office, which was about a 40-mile drive. Plaintiff testified that they arrived back at the office between 4 p.m. and 5 p.m., and no one was at the office. Mr. Delabruere then drove Plaintiff to Onslow Memorial Hospital in Plaintiff's wife's truck.
16. Mr. Treece testified that he received a telephone call on the afternoon of July 14 from a nurse wanting to know if Plaintiff worked for Defendant-Employer. Mr. Treece told her that he did not. Mr. Treece testified that the next day, Mr. McAvoy told him that somebody had been shot with a nail gun on the job the day before, and that he (Mr. Treece) later realized that the victim was Plaintiff. *Page 5 
17. Mr. Treece testified that Plaintiff did not have his permission to be on the job site on July 14 and that he was never employed by Defendant-Employer.
18. Mr. Delabruere testified that he believed that, as of July 14, Plaintiff had permission to ride in the work truck, to use Defendant-Employer's tools, and to be at the job site. He confirmed that he, Plaintiff, and Mr. McAvoy had driven back to Defendant-Employer's office in the work truck after the accident.
19. Mr. Delabruere confirmed that Plaintiff had him drive them to work on July 14 in Plaintiff's wife's truck and that he drove Plaintiff to the hospital that afternoon in Plaintiff's wife's truck.
20. Neither Mr. McAvoy nor Mr. Treece's son testified at the hearing.
21. Plaintiff was seen in the emergency room at Onslow Memorial Hospital on the evening of July 14 and underwent surgery the next day at Craven Regional Medical Center to remove the nail from his left upper arm. Dr. Carolina Paul, the surgeon who treated Plaintiff's wound, noted that it was "clearly over 24 hours old." Plaintiff was released to return to work as of Monday, July 21, 2008.
22. On or about August 16, 2008, Plaintiff went to work full-time with Wild Builders, making $13.00 per hour.
23. Mr. Treece terminated Mr. Delabruere after one week. Mr. Delabruere was paid $296.25 for the week.
24. The Full Commission accords more weight to the testimony of Mr. Treece than that of Plaintiff and Mr. Delabruere. Therefore, the Full Commission finds that Plaintiff was not hired to work for Defendant-Employer and was not an employee when he was injured on July 14, 2008. *Page 6 
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The question of whether an employment relationship existed between Plaintiff and Defendant-Employer is jurisdictional. Plaintiff has the burden of proof on the issue of whether or not he was an employee of Defendant-Employer. Hughart v. Dasco Transp.,Inc., 167 N.C. App. 685, 606 S.E.2d 379 (2005).
2. Because Plaintiff failed to establish that he was an employee of Defendant-Employer at the time of the injury, Plaintiff's claim must be dismissed. N.C. Gen. Stat. § 97-2(2).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Under the law, Plaintiff's claim must be, and hereby is, DENIED.
2. Each side shall bear its own costs.
This the ___ day of March 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING: *Page 7 
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1